**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL E. HOFFMAN, | ) | CASE NO: 3:19-cv-00766 |
| | ) | |
| Plaintiff, | ) | JUDGE ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

**I.     Introduction**

Claimant, Michael E. Hoffman seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and a period of Disability Insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Hoffman's application for SSI and DIB be affirmed.

## II. Procedural History

On June 28, 2013, Hoffman filed for SSI and DIB for a period of disability and disability benefits beginning March 31, 2013. (Tr. of Proceedings before the Social Security Administration, ECF No. 10 at 63). Hoffman later amended his onset date to October 20, 2012. (ECF No. 10 at 275). Hoffman alleged the following illnesses, injuries, or conditions: anxiety disorder, depression, high blood pressure, and effects of Chiari malformation surgery. (ECF No. 10 at 63). The Commissioner denied his application on August 29, 2013 and upon reconsideration on November 27, 2013. (ECF No. 10 at 63 and 103). Hoffman requested an administrative hearing, which was held before an ALJ on July 16, 2015. In an August 6, 2015 written decision, the ALJ denied Hoffman's application for benefits. (ECF No. 10 at 603). On September 1, 2016, the Appeals Council denied Hoffman's request for review. (ECF No. 10 at 622).

On October 31, 2016, Hoffman filed a complaint seeking judicial review of the Commissioner's decision.[1] (ECF No. 10 at 628). On October 6, 2017, Magistrate Judge Greenberg issued a report and recommended that the district court vacate the Commissioner's decision and remand the case for further proceedings. (ECF No. 10 at 644). On December 11, 2017, the district court adopted the Report and Recommendation, vacated the Commissioner's decision and remanded the case for further proceedings. (ECF No. 10 at 672).

---

[1] Complaint, *Hoffman v. Comm'r of Soc. Sec.*, No. 3:16-cv-02648 (N.D. Ohio Oct. 16, 2016), ECF No. 1. Certain matters from the 2016 case are contained within the Tr. of Proceedings (ECF No. 10) in the instant matter. When possible, citations herein refer to the location of those documents within ECF No. 10.

Hoffman requested a second administrative hearing, which was held before an ALJ on December 6, 2018. (ECF No. 10 at 595-602). In a December 24, 2018 written decision, the ALJ denied Hoffman's application for benefits. (ECF No. 10 at 573-594). On July 31, 2018, the Appeals Council denied Hoffman's request for review. (ECF No. 10 at 675).

He now seeks judicial review pursuant to 42 U.S.C. §405(g).

## III. Evidence

A. Summary of Evidence through Hoffman's Administrative Hearing[2]

Claimant Hoffman is a 41-year-old male. In October 2012, following a diagnosis of a Chiari malformation[3], Hoffman underwent surgery. (ECF No. 10 at 37, 42). At the time of his surgery, Hoffman was a 33-year-old male. Prior to his surgery, Hoffman was employed at Wyandot as a production operator. (ECF No. 10 at 37, 42). Hoffman's position as a production operator required a significant amount of heavy lifting, bending and twisting. (ECF No. 10 at 37,

---

[2] At his second administrative hearing, Hoffman relied on the testimony elicited at the first hearing noting that since the period had closed the earlier testimony would be more reliable than any additional testimony. (ECF No. 10 at 598). The court has reviewed the entire transcript. However, rather than reciting the facts up to and including the first hearing herein, the court has provided a summary of the facts. A more detailed recitation of the facts including the specific medical evidence can be found in the 2017 Report and Recommendation located at *Hoffman v. Comm'r of Soc. Sec.*, No. 3:16-cv-02648 (N.D. Ohio Oct. 16, 2016), ECF No. 14; or in the instant matter at ECF No. 10 at 644.

[3] Chiari malformations are structural defects in the base of the skull and cerebellum, the part of the brain that controls balance. Normally the cerebellum and parts of the brain stem sit above an opening in the skull that allows the spinal cord to pass through it (called the foramen magnum). When part of the cerebellum extends below the foramen magnum and into the upper spinal canal, it is called a Chiari malformation (CM). National Institutes of Health, https://www.ninds.nih.gov/disorders/patient-caregiver-education/fact-sheets/chiari-malformation-fact-sheet. Last visited July 27, 2020.

42). After his surgery, Hoffman attempted to return to work for a short period of time but was unsuccessful. (ECF No. 10 at 38). Hoffman claims he was unable to return to work after surgery because he was experiencing headaches, severe neck pain, restricted movement, and severe back pain. (ECF No. 10 at 42). Also, during this period, Hoffman was diagnosed with anxiety and depression, which caused panic attacks, vomiting, diarrhea, dizzy spells, nausea, sweating, and suicidal thoughts. (ECF No. 10 at 42, 44). On June 27, 2013, Hoffman's Spine Physiatrist and Pain Consultant opined that Hoffman would not be able to do a manual labor job in the future, advised him to "obtain a sedentary or light duty job" and ordered him off work for one month. (ECF No. 10 at 471). Hoffman collected unemployment from the third quarter of 2013 until the second quarter of 2014. (ECF No. 10 at 34). In June 2014, Hoffman returned to full-time work as a janitor. (ECF No. 10 at 30, 35). Hoffman requested a closed period of October 20, 2012 (the date of his surgery) until June 19, 2014 (the day before he returned to full-time work). (ECF No. 10 at 30-31, 269, 273).

At Hoffman's first administrative hearing, the vocational expert, Lynelle Hall, classified Hoffman's previous employment as a production operator, as "heavy". (ECF No. 10 at 53). Based on the ALJ's proposed hypothetical, Hall opined that Hoffman would not be able to return to his previous employment. However, based on the same proposed hypothetical, Hall opined that that Hoffman would be able to perform thousands of light jobs in the state and national economies such as a cleaner, maker, or bagger. (ECF No. 10 at 54).

B. Evidence from Second Administrative Hearing

Hoffman did not testify or present any new evidence at the second administrative hearing but relied solely on the evidence from the previous hearing. (ECF No. 10 at 598). Another

4

vocational expert, Jerry Olsheski, testified at the second hearing. (ECF No. 10 at 599-601). Olsheski classified Hoffman's prior employment as "medium" and "unskilled". (ECF No. 10 at 599). The ALJ asked the vocational expert to assume "Hoffman was capable of the full range of light work with only occasional overhead reaching, and the occasional climbing of ladder, rope, or scaffold, frequent stoop; occasional crawl; and only occasional exposure to dusts, fumes, or gases; and he retains the ability to understand, remember and carry out simple, repetitive tasks; and able to maintain concentration and attention for two-hour segments over an eight hour work period; able to respond appropriately to supervisors and coworkers in a task-oriented setting; with contact – where contact with others is casual and infrequent; and able to adapt to simple changes; and avoid hazards; and a setting without strict production quotas, would he be able to return to the previous employment?" (ECF No. 10 at 599-600). The vocational expert testified that based on that hypothetical Hoffman could not return to his previous employment, but that he would be able to perform thousands of jobs in the national economy, such as mail clerk, sorter, and unskilled packer. (ECF No. 10 at 600). Additionally, the ALJ asked the vocational expert to opine as to employer tolerance for off-task time and absence in the course of a month. The vocational expert opined that "if a worker is off-task on a consistent basis more than 10% of the work day, they usually run into problems and eventually are terminated. In terms of absenteeism, my opinion, if they're missing more than one day a month, unexcused, late, and that would include [leaving] early,…eventually, most employers would initiate some type of disciplinary process and terminate that worker." (ECF No. 10 at 601).

**IV.   The ALJ's Decision**

      The ALJ made the following paraphrased findings relevant to this appeal:

5. Hoffman has the RFC to perform light work except that he can occasionally reach overhead; can occasionally climb ladders, roper, or scaffolds; can frequently stoop; can occasionally crawl; and can have occasional exposure to dusty, fumes or gases. Mentally, Hoffman retains the ability to understand, remember and carry out simple, repetitive tasks; able to maintain concentration and attention for two hour segments over an eight-hour work period; able to respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and infrequent; and able to adapt to simple changes and avoid hazards in a setting without strict production quotas. (ECF Doc. 10 at 575).

10. Considering Hoffman's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (ECF Doc. 11 at 579).

Based on his findings, the ALJ determined that Hoffman was not under a disability from October 20, 2012 until June 19, 2014.

Hoffman argues that this determination is not supported by substantial evidence. Specifically, he argues that the ALJ's summary of the physical exam findings in the record does not accurately portray the record and that the ALJ improperly parsed Hoffman's medical records and ignored numerous treatment records which reflect abnormal physical examination findings. (ECF No. 13 at 20).

**V. Law & Analysis**

   A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers* v. *Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers*, 486 F.3d at 241; *Biestek* v. *Comm'r of Soc. Sec.*, 880 F.3d 778,

783 (6th Cir. 2017) ("Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." (citing *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971))).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*, 880 F.3d at 783 ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen* v. *Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen* v. *Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers* v. *Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer* v. *Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting

7

*Sarchet v. Charter,* 78 F.3d 305, 307 (7th Cir. 1996); citing *Wilson* v. *Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion)); *Shrader* v. *Astrue,* No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) (citing *Morris* v. *Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs* v. *Comm'r of Soc.Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

B. Substantial Evidence Supports the ALJ's Decision

The determination of a claimant's residual functional capacity ("RFC") is an administrative finding reserved to the Commissioner based on an evaluation of the totality of the record evidence. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (citing *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013)). Hoffman argues that the ALJ's RFC finding is not supported by substantial evidence in this case.

Hoffman contends that the ALJ failed to properly evaluate the evidence supporting his assessed RFC. (ECF No. 13 at 18). Hoffman argues that the ALJ again failed to properly parse the treatment notes and omitted discussion of physical exam abnormalities. (ECF No. 13 at 18). Hoffman claims that the only area where the ALJ discussed his post-operative physical examination findings was when the ALJ wrote, "[u]pon examination, the claimant has tenderness and decreased range of motion of the cervical [spine], but with normal sensation to light touch, normal strength, and intact deep tendon reflexes." (ECF No. 13 at 18). Hoffman argues the record does not support the ALJ's finding that the record demonstrated he had normal sensation and intact reflexes. (ECF No. 13 at 18). Specifically, Hoffman claims that the ALJ failed to note the abnormalities in the four treatment notes cited in support of his assessed RFC and failed to mention five treatment notes which allegedly note significant abnormal physical examination findings. (ECF No. 13 at 18-19). But, the ALJ was not required to discuss every piece of evidence in the written decision. *Kornecky v. Comm'r of Soc. Sec.* 167 F. App'x 496, 508 (6th Cir. 2006).

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an assessment of a claimant's ability to do work despite his impairments. *Walton v. Astrue*,

773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

A plaintiff's RFC is defined as "the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§404.1545(a) and 416.945(a). An ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing the record – i.e., "cherry-picking" it – to avoid analyzing all the relevant evidence. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). An ALJ improperly "cherry-picks" evidence when his decision does not recognize a conflict between the functional limitations described in a medical opinion and the ALJ's RFC finding and does not explain why he chose to credit one portion over another. *See Rogers v. Comm'r of Soc. Sec.*, No. 5:17-cv-1087, 2018 U.S. Dist. LEXIS 68715 *44 (N.D. Ohio 2018) (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013)); *see also Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (stating that, if a medical source's opinion contradicts the ALJ's RFC finding, the ALJ must explain why he did not include the limitation in his RFC determination).

Here, the ALJ's decision considers all the relevant evidence in forming Hoffman's RFC and did not "cherry-pick" it. The ALJ's prior decision in this case incorrectly made it appear as if Hoffman recovered from surgery without any complications and failed to mention any abnormal

findings in Hoffman's physical examinations. (ECF No. 10 at 644). In contrast, the ALJ's instant decision notes abnormal findings in Hoffman's physical examinations stating that after surgery Hoffman suffered from headaches, neck and back pain, burning, cramping, tenderness, and decreased range of motion of the cervical. (ECF No. 10 at 582-83). The record indicates that Hoffman had at least fifteen physical examinations during the closed period. Hoffman is correct that the ALJ only discusses four out of the fifteen physical examinations. (ECF No. 583). The physical examinations discussed by the ALJ occurred on February 7, 2013, July 23, 2013, January 31, 2014, and May 16, 2014. The ALJ summarized these examinations stating that Hoffman had abnormalities including, "tenderness and decreased range of motion of the cervical, but with normal sensation to light touch, normal strength, and intact deep tendon reflexes." (ECF No. 583). On February 7, 2013, Dr. Arora noted right and left thoracic paraspinous musculature with trigger points, normal curvature, no vertebral tenderness, normal motor function, normal sensation to light touch, and that Hoffman's deep tendon reflexes were intact. On July 23, 2013, Dr. Reddy noted tenderness, intact sensations, 3+ reflexes, full strength, restricted range of motion and painful extension of the lumbar spine, a positive Hoffman sign, Spurling's sign negative and no ankle clonus, crepitus in the right knee with extension. On January 31, 2014, Dr. Reddy noted intact nerves, normal posture, normal transfer, normal gait, restricted range of motion of the cervical spine, upper extremity tremors, intact sensations, +3 reflexes, full strength, positive Hoffman's sign, and Spurling's sign negative and no ankle clonus. On May 16, 2014, Dr. Reddy noted intact sensations, +3 reflexes, full strength, positive Hoffman's sign, and Spurling's sign negative and no ankle clonus.

Hoffman argues that the ALJ failed to note abnormalities in these four physical examinations, including hyperactive +3 reflexes, right and left thoracic paraspinous musculature with trigger points, positive Hoffman's sign, and upper extremity tremors. (ECF No. 13 at 19). The record shows that the ALJ discussed Hoffman's reflexes and stated that they were intact, which is consistent with Dr. Arora's notes from February 7, 2013. Hoffman argues that his hyperactive +3 reflexes were an abnormality that the ALJ failed to mention. The Court disagrees. The record does not provide enough information for the ALJ to determine whether Hoffman's +3 reflexes were normal or abnormal.[4] Therefore, the Court finds that it was sufficient for the ALJ to rely upon medical records demonstrating that Hoffman's reflexes were intact. Further, although the Court agrees that the ALJ did not discuss Hoffman's right and left thoracic paraspinous musculature with trigger points, positive Hoffman's sign, and upper extremity tremors, the Court finds that the ALJ was not required to discuss every piece of the medical records in his written decision. *See Kornecky,* 167 F. App'x at 508.

Hoffman also asserts that the ALJ failed to mention abnormalities found in five other physical examinations that occurred on February 7, 2013, March 1, 2013, March 18, 2013, April 2, 2013, and June 11, 2013.[5] The ALJ is not required, however, to specify every single piece of evidence relied upon to form his decision. *Rottmann v. Comm'r of Soc. Sec.*, No. 19-2205, 2020

---

[4] Whether the 1 + and 3 + responses are normal depends on what they were previously, that is, the patient's reflex history; what the other reflexes are; and analysis of associated findings such as muscle tone, muscle strength, or other evidence of disease. https://www.ncbi.nlm.nih.gov/books/NBK396/ (last visited 8/12/2020).

[5] Hoffman incorrectly lists the February 7, 2013 physical examination since, as noted above, the ALJ discussed this examination in his decision.

WL 3397744, at *3 (6th Cir. June 19, 2020); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 438 n.11 (6th Cir. 2014) (" [a]n ALJ 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'") (quoting *Loral Defense Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)). "His factual findings as a whole must show only that he implicitly resolved the conflicts in the evidence." *Id.* The record supports such a finding here.

For example, Hoffman claims that the physical examination records from these visits are contrary to the ALJ's assertion that he had normal sensation. It was consistently reported that Hoffman had normal sensation to light touch in his physical examinations. It was only reported that Hoffman had decreased sensation in his left lateral forearm as well as fingertips compared to right side in two out of fifteen physical examinations. Moreover, Dr. Fleming noted that this decreased sensation was a mild change. Additionally, although the ALJ failed to specifically note an abnormality regarding Hoffman's right and left thoracic paraspinous musculature with trigger points, which was noted in Hoffman's February 7, 2013 and March 1, 2013 physical examinations, doing so was not required. These abnormalities were only noted in two out of fifteen physical examinations and the record is clear that the ALJ relied on x-rays of the thoracic spine on February 7, 2013 and March 6, 2013, which showed no significant abnormalities. The court finds that the ALJ carefully reviewed the record, accurately summarized the records, and did not inappropriately parse the record by stating that Hoffman had normal sensation to light touch upon examination. "The ALJ's decision may stand even though he did not expressly reference every piece of evidence in the record." *Rottmann*, 2020 WL 3397744, at *3.

In addition to the treatment notes discussed in the ALJ's decision, he also considered other medical evidence of Hoffman's physical assessments and limitations including, several MRIs, "off-work" notes, medical opinions, and Hoffman's activities. He considered three post-operative MRIs of the pituitary gland completed in January 2013, September 2013, and January 2014. Each MRI revealed the pituitary gland was stable in size. (ECF No. 10 at 375, 523, 530, 531, 533, 582-83). He considered the "off-work" notes of Hoffman's physicians, including a June 27, 2013 off-work note from Dr. Reddy, Hoffman's pain management consultant, which stated that he advised Hoffman "to think about obtaining a sedentary or a light duty job" and stated that he qualified for one month off work to give him time to obtain a light duty job. (ECF No. 10 at 477, 584).

The ALJ considered the opinions from the state agency reviewing physicians who reviewed Hoffman's medical records in August and November of 2013. He gave their initial opinions regarding Hoffman's physical assessment only partial weight. (ECF No. 10 at 584). He gave their reconsideration determination great weight "because of their program familiarity, longitudinal view of the medical evidence of record, and their opinions are consistent with the medical evidence." (ECF No. 10 at 584). Additionally, he noted that their reconsideration determinations appropriately included "environmental limitations [which] more adequately accounts for [Hoffman's] respiratory impairment." (ECF No. 10 at 584). Moreover, the ALJ's RFC determination is more restrictive than the opinions from the state agency reviewing physicians as he found that Hoffman could perform only light work rather than medium work. (ECF No. 10 at 102, 119, 586). The ALJ also considered Hoffman's activities including Hoffman representing that he was actively looking for work within his restrictions during the closed period, receiving

14

unemployment payments during the closed period, and his ability to walk for a long time. (ECF No. 10 at 189-91, 481, 584).

Basically, Hoffman complains that the ALJ did not focus on evidence in the record that would have supported a disability finding. However, even if evidence existed in the record to support a different outcome, the ALJ's decision will not be invalidated where the record reasonably supports the decision. *Buxton v. Halter,* 246F.3d 762, 772-773 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 289-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."); *and see Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984). Here, the ALJ discussed portions of Hoffman's medical records and medical opinions in the record supporting his RFC determination.

The ALJ's RFC determination was based on substantial evidence in the record, which he explained in his decision. Hoffman's argument that he should have discussed more evidence from the record is not well-taken. Because the ALJ's decision was supported by substantial evidence, it must stand even if there was evidence in the record supporting another conclusion. *See Buxton,* 246 F.3d at 772-773; *Mullen,*800 F.2d at 545; *Her,* 203 F.3d at 289-90.

## VI. Recommendation

Because substantial evidence supported the ALJ's decision and because Hoffman has not identified any incorrect application of legal standards, I recommend that the ALJ's decision be AFFIRMED.

DATED: 9/1/2020

   *s/Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).